IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| EDWARD C. HANKS,<br>    Plaintiff,<br><br>v.<br><br>KATHY ASHCRAFT *et al.*,<br>    Defendants. | Case No. 3:24-cv-03051-JEH |

### Order

Before the Court for screening is a Motion for Leave to File a Third Amended Complaint (Doc. 50) filed by Plaintiff Edward C. Hanks, an inmate at Illinois River Correctional Center. Plaintiff has also filed a Motion for Injunctive Relief (Doc. 51). Defendants Shana Clarkson and Zorian Trusewych have filed a Motion for Extension of Time (Doc. 49).

For the following reasons, Plaintiff's Motion for Leave to File a Third Amended Complaint is denied, Plaintiff's Motion for Injunctive Relief is moot, and Defendants' Motion for Extension of Time is granted.

### I

In March 2024, Plaintiff filed an Amended Complaint (Doc. 12), alleging constitutional violations at Western Illinois Correctional Center ("WICC"). After screening the pleading, the Court determined that Plaintiff's pleading stated the following claims: (1) an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Kathy Ashcroft, Shana Clarkson, and Zorian Trusewych; (2) a First Amendment retaliation claim against Defendants Christian Spears and Jon Wessel; and (3) a Rehabilitation Act claim against the Illinois Department of Corrections ("IDOC"). (Mer. Rev., Doc. 17 at 10:2.)

1

Plaintiff subsequently filed a Motion for Leave to File a Second Amended Complaint (Doc. 38) that the Court denied (Doc. 47).

## II

### A

Plaintiff's Third Amended Complaint is before the Court for merit review under 28 U.S.C. § 1915A, which requires the Court to "screen" the pleading and, through such process, identify and dismiss any legally insufficient claim or the entire action if warranted. A claim is defective if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A. The Court accepts Plaintiff's factual allegations as true and construes them liberally in his favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "'state a claim to relief that is plausible on its face.'" *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2013)).

### B

Consistent with his current amended pleading, Plaintiff realleges the constitutional violations at WICC, which this Court determined stated plausible claims against Healthcare Administrator Ashcraft, Nurse Practitioner Clarkson, Medical Director Trusewych, Corrections Officers Spears and Wessel, and IDOC, as earlier mentioned. Plaintiff's third amended pleading seeks to add claims against Placement Officer Bright, Dietician Jody Parish, and Wexford Health Sources, Inc. ("Wexford"), which this Court had previously dismissed for failure to state a claim. (Mer. Rev., Docs. 17 at 5-6, 9; 47 at 5:1.)

Plaintiff asserts that despite knowing about his medical ailments, Defendant Ashcraft routinely denied Plaintiff's grievances regarding medical care and made "misrepresentation[s]" to Defendant Bright, who would assign Plaintiff mentally

ill and segregation-prone inmates. (Pl. 3rd Amend. Compl., Doc. 50 at 4:19.) Plaintiff further claims that he was informed by many inmates that "officers" were "out to get" him, based on conversations overheard at the healthcare unit. (*Id*. at 20.) Plaintiff recalls that every time an inmate was moved out of his cell, Defendant Bright would assign Plaintiff another cellmate. (*Id*. at 5:21.)

Although Plaintiff does not provide a date, he states that a long-standing practice of dieticians assisting inmates with disabilities by carrying food trays abruptly ended. After Plaintiff, along with other inmates, filed grievances, the practice was reinstated. Afterward, Plaintiff identified his intent to file suit against Defendant Parish. (*Id*. at 5:23.) Parish submitted a disciplinary ticket against Plaintiff for intimidation and threats that was expunged after an Adjustment Committee hearing. Plaintiff also claims that Parish denied his grievances based on Defendant Ashcraft's "distortion" of his medical files. (*Id*. at 5:25.)

Plaintiff names Wexford, based on "its agents, apparent agents, employees acting within the scope of their employment or agency relationship, failed to exercise due care and caution in treating [Plaintiff's] conditions …." (*Id*. at 7:36.)

C

Defendant Wexford can be held liable under § 1983 if an unconstitutional act is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010); *see also Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927-28 (7th Cir. 2004) (stating that the standard for municipal liability in *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), applies to corporations as well).

Plaintiff does not state a claim against Wexford as his allegations are based on the constitutional violations alleged against Wexford's employees. *See Pembaur*

*v. City of Cincinnati*, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby [clarify] that municipal liability is limited to action for which the municipality is … responsible.") (emphases in original).

A *prima facie* case of First Amendment retaliation requires a plaintiff to establish "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008).

Plaintiff does not state a plausible retaliation claim against Defendant Parish. Plaintiff claims that Parish wrote him a disciplinary ticket after he indicated his intent to file suit against her. However, "[a] single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) (affirming dismissal of the plaintiff's retaliation claim on allegations a defendant "filed an unjustified disciplinary charge, which another [d]efendant upgraded to a 'major offense'" where "[t]he charge was later dismissed"); *see also Czapiewski v. Zimkiewicz*, 768 F. App'x 579, 582 (7th Cir. 2019) (noting that the "conduct report was dismissed after a hearing and [the plaintiff] was not disciplined, so he did not suffer any 'deprivation'").

Plaintiff also states no claim against Defendant Parish for processing Plaintiff's grievances. Reviewing grievances without personal involvement in the claimed deprivation is insufficient to establish a constitutional violation. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."); *see also Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir.

4

2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [the plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim.").

Additionally, Plaintiff does not state a retaliation claim against Defendant Bright. Plaintiff does not provide facts that establish or permit the inference that Bright assigned cellmates because Plaintiff engaged in protected First Amendment activity. Instead, Plaintiff asserts that Bright's actions were based on undisclosed misrepresentations made by Defendant Ashcraft. Additionally, despite his claim that third parties notified him that WICC staff were out to get him, he does not claim that Bright demonstrated such animus.

Although "[c]onduct that does not independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper, retaliatory motive," Plaintiff provides no facts that Bright was motivated to retaliate because Plaintiff exercised his First Amendment rights. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005).

Accordingly, the Court denies Plaintiff's Motion for Leave to File a Third Amended Complaint (Doc. 50).

### III

The purpose of a preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case. *American Hospital Ass'n v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). A preliminary injunction is an "extraordinary and drastic remedy" and "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (citation omitted). In civil suits, "damages are the norm, so the plaintiff must show why his case is abnormal." *e360 Insight v.*

*Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) (quoting *Walgreen Co. v. Sara Creek Property Co., B.V.*, 966 F.2d 273, 275 (7th Cir. 1992)).

"To determine whether a situation warrants such a remedy, a district court engages in an analysis that proceeds in two distinct phases: a threshold phase and a balancing phase." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). "A party seeking a preliminary injunction must satisfy all three requirements in the 'threshold phase' by showing that (1) [he] will suffer irreparable harm in the period before the resolution of its claim; (2) traditional legal remedies are inadequate; and (3) there is some likelihood of success on the merits of the claim." *HH-Indianapolis, LLC v. Consol. City of Indianapolis*, 889 F.3d 432, 437 (7th Cir. 2018).

Moreover, the Seventh Circuit has described the type of injunction requiring affirmative action as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued" because they require the court to command a defendant to take a particular action. *Id.*

Before granting injunctive relief, a court must determine whether such a request is moot. *See Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 991 (7th Cir. 2000) ("When a case is moot, it must be dismissed as non-justiciable.").

Plaintiff's Motion for Injunctive Relief requests that the Court issue a mandatory preliminary injunction directing IDOC to schedule Plaintiff to be examined by a qualified specialist to evaluate his spine. (Doc. 51-1 at 1.) However, "[i]f a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)); *see also Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) ("[The plaintiff's] prayers for injunctive relief are

moot because he is no longer an inmate at [the facility] . . . [and] has not shown a realistic possibility that he will again be incarcerated in the same state facility.").

As noted, Plaintiff's alleged constitutional violations occurred at WICC. In May 2025, Plaintiff filed his Notice of Change of Address (Doc. 37), confirming his transfer to Illinois River Correctional Center ("IRCC"), which the IDOC lists as his parent institution. *See* Individuals in Custody Search, https://idoc.illinois.gov/offender/inmatesearch.html, Search for Edward C. Hanks, No. N21633, (last visited Aug. 4, 2025) (showing IRCC as Plaintiff's parent institution). Plaintiff has not demonstrated a realistic probability that he will return to WICC. Thus, any injunctive relief would be speculative and directed to IRCC officials, who are not parties in this case. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (concluding the proper defendant in an action for injunctive relief is the person who "would be responsible for ensuring that any injunctive relief is carried out."). Therefore, Plaintiff's Motion for Preliminary Injunction (Doc. 51) is moot.

## IV

The Fourth Motion for Extension of Time (Doc. 49) filed by Defendants Clarkson and Trusewych is granted. Defendants have until September 2, 2025, to respond to Plaintiff's outstanding discovery requests.

## V

In light of the foregoing, the Court Orders as follows:

1) Defendants' Motion for Extensions of Time (Doc. 49) is granted. Defendants have until September 2, 2025, to respond to Plaintiff's outstanding discovery requests.

2) Plaintiff's Motion for Leave to File a Third Amended Complaint (Doc. 50) is denied.

3) Plaintiff's Motion for Injunctive Relief (Doc. 51) is moot.

*It is so ordered.*

Entered: August 5, 2025

<u>s/Jonathan E. Hawley</u>
U.S. District Judge