E-FILED
Wednesday, 16 September, 2026 08:46:57 AM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| EDWARD C. HANKS,<br>Plaintiff,<br><br>v.<br><br>KATHY ASHCRAFT *et al.*,<br>Defendants. | Case No. 3:24-cv-03051-JEH |

**Order**

Before the Court is a Motion for Summary Judgment (Doc. 63) filed by Defendants Kathy Ashcraft, Christian Spears, Jon Wessel, and the Illinois Department of Corrections ("IDOC"). Plaintiff Edward C. Hanks, an inmate at Illinois River Correctional Center, filed a response (Doc. 71), and Defendants have replied (Doc. 74). For the following reasons, Defendants' dispositive motion is granted in part and denied in part.

**I**

Plaintiff filed an amended pleading (Doc. 12), alleging constitutional violations at Western Illinois Correctional Center ("WICC"). After screening, the Court determined Plaintiff stated the following claims: (1) an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Ashcraft, Shana Clarkson, and Zorian Trusewych; (2) a First Amendment retaliation claim against Defendants Spears and Wessel; and (3) a Rehabilitation Act claim against IDOC. (Mer. Rev., Doc. 17 at 10:2.)

**II**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party must provide documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

"When opposing a properly supported motion for summary judgment, the non-moving party must 'cit[e] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence … of a genuine dispute.'" *Melton v. Tippeconoe County*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)). All facts must be construed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence supporting the nonmovant's position is insufficient to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252.

**III**

**A**

Defendant Ashcraft, a licensed registered nurse, was employed as the Health Care Unit Administrator ("HCUA") at WICC during the time alleged. (Ashcraft Disc. Res., Doc.63-1 at 1:2; Ashcraft Decl., Doc. 63-2 at 1:1-2.) The HCUA is an administrative position that does not provide care to inmates or determine

what care an inmate requires. (Ashcraft Disc. Res., Doc. 63-1 at 2:3.) Even in her role as a nurse, Ashcraft is not qualified to diagnose medical conditions or determine an appropriate course of treatment without the supervision of a qualified medical provider. (Ashcraft Decl., Doc. 63-2 at 1:3.) Ashcraft did not directly provide medical care to WICC inmates while assigned as the HCUA. (*Id*. at 1:4.) Additionally, HCUAs are not responsible for scheduling off-site appointments for inmates. Instead, the HCUA refers scheduling matters to the medical records director, who coordinates appointment scheduling. (Ashcraft Disc. Res., Doc. 63-1 at 3:4.) When Ashcraft receives information requests from grievance officers, she reviews the relevant medical records, interprets them, and documents their meaning in her response. (Ashcraft Decl., Doc. 63-2 at 2:6.)

Plaintiff testified that he was not deterred from filing grievances by the actions of Defendants Spears or Wessel. (Pl. Dep., Doc. 63-3 at 94:17-24, 95:1-4.) Spears states he did not intend to target or retaliate against Plaintiff in writing the disciplinary ticket at issue. (Spears Dis. Res., Doc. 63-5 at 2.) Plaintiff's grievance history contains grievances he filed against Wessel (grievance 22-3320) and Spears (grievance K25-24-02-583), in addition to several unrelated grievances filed since their actions. (Griev., Doc. 63-4 at 1-8.)

Plaintiff acknowledged he was never denied access to books or other materials from the law library. (Pl. Dep., Doc. 63-3 at 80:9-15, 81:1-4.) Plaintiff also noted that his issues were not with getting materials from the law library to aid his legal work, but with not receiving other benefits, such as privacy, quiet, or a desk for writing. (*Id*. at 82:5-18.) No corrections staff member denied Plaintiff's reasonable accommodation request related to accessing materials in the law library. (*Id*. at 83:6-24, 84:1-16.) The only denials involved requests for "a private and quiet space to work," relocation of the law library "to the ground floor," or

that he "be transferred to a facility with a ground floor law library." (*Id*. at 83:6-24, 84:1-23.)

**B**

**1**

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail on a claim of inadequate medical care, an inmate must show the prison official was deliberately indifferent to a serious medical need. *Id*. at 106. The deliberate indifference standard requires an inmate to satisfy a substantial threshold to support a cruel and unusual punishment claim under the Eighth Amendment. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). "[A] claim based on deficient medical care must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

An objectively serious medical need is one that a physician has diagnosed as mandating treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). To satisfy the subjective component, a plaintiff must show "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The Court summarized Plaintiff's facts alleged against Defendant Ashcraft as follows:

> Plaintiff … claims that for the past two years, Defendants Ashcraft and Trusewych have denied his grievances and direct requests to be referred "off-site" for magnetic

> resonance imaging ("MRI") and for an eye examination. (*Id*. at 9:5.) Plaintiff acknowledges receiving an eye examination in November 2022, but claims the "problem still exist[s]…." (*Id*. at 10:7.) Plaintiff notes that Ashcraft and Trusewych referred him for an MRI in January 2023, but claims "there was a fraudulent report returned that was blank."

(Mer. Rev. Ord., Doc. 17 at 2-3.)

The Court determined at screening that "[a]lthough Plaintiff has no constitutional right to demand specific care such as an MRI or to be referred for off-site medical services, his account … permits the reasonable inference that Defendants Ashcraft and Trusewych knew about but disregarded the medical conditions Plaintiff claims were not addressed." (*Id*. at 5.) Those alleged medical conditions included Plaintiff's lumbar spine, sciatica, right leg foot drop, and left shoulder. (*Id*. at 2.)

Defendant Ashcraft asserts that she is entitled to summary judgment because she was not deliberately indifferent to Plaintiff's serious medical needs. In this regard, Ashcraft reiterates that she was not authorized to provide medical care to inmates in her role as HCUA.

Plaintiff initially claims that Defendant Ashcraft knew of Plaintiff's medical needs because she responded to the many grievances he filed regarding lack of medical care. However, knowledge alone does not establish the requisite mental state to satisfy the subjective component of deliberate indifference. *See Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) ("In *Burks*, we rejected the notion that 'everyone who knows about a prisoner's problems' will incur § 1983 liability.") (quoting *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009)); *see also Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply

processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance.”).

Plaintiff also claims that despite Defendant Ashcraft’s assertion that she did not schedule off-site medical appointments for WICC inmates as HCUA, she admitted as much in a discovery response. In particular, Plaintiff cites Ashcraft’s interrogatory response in which he asked about her plan for Plaintiff’s surgical procedures after WICC’s medical director’s leave of absence. (Ashcraft Disc. Res., Doc.63-1 at 6:11.)

In her response, Defendant Ashcraft rejected Plaintiff’s assumed premise that she was responsible for scheduling surgical procedures, adding that “the creation of plans of care, and the exercise thereof, while facilitated by HCUA’s administrative work, does not involve consultation with or the medical opinions of HCUAs, and are solely at the discretion of Plaintiff’s care team of medical providers.” (*Id*.) Contrary to Plaintiff’s assertion, Ashcraft’s response is consistent with her assertion that in her role as HCUA, she was not responsible for providing medical care or scheduling off-site appointments for WICC inmates.

Plaintiff further claims that Ashcraft’s inaction caused delays or denial. In support of that assertion, Plaintiff cites medical records he does not append to his response. However, co-Defendant Shana Clarkson filed a dispositive motion (Doc. 78) containing the cited medical records, which the Court has reviewed and concludes that they do not provide Plaintiff support for his claim. *See* Fed. R. Civ. P. 56(c)(3) (“The court need consider only the cited materials, but it may consider other materials in the record.”).

For example, Plaintiff cites Offender Outpatient Progress Notes that show Plaintiff received medical care for complaints of back pain and bilateral lower extremity edema (i.e., swelling legs) in December 2020 and constipation in March 2021. (Doc. 78-5 at 85, 88-89.) Absent from these records is any indication that

Defendant Ashcraft provided or denied Plaintiff medical care, referred or scheduled Plaintiff for off-site care, or delayed Plaintiff's medical care.

Defendant Ashcraft has provided testimonial evidence that she had no personal involvement in, or responsibility for, providing medical care to WICC inmates in her role as HCUA, which Plaintiff failed to rebut with admissible facts demonstrating a genuine factual dispute on that issue. Therefore, Ashcraft's Motion for Summary Judgment on Plaintiff's Eighth Amendment deliberate indifference claim is granted.

**2**

Plaintiff asserted in his amended pleading that Defendants Spears and Wessel retaliated against him for writing grievances about the lack of medical care. Specifically, Plaintiff claimed that Spears authored a false disciplinary report and Wessel disregarded his front cuffing permit, which required his hands to be cuffed in front of his body while walking with a quad cane.

"To prevail on a First Amendment retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotation marks omitted). Regarding the second condition, the chilling of speech, the Seventh Circuit applies "an objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011); *see also Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016) ("[F]or retaliation for filing petitions to be actionable, the means of retaliation must be sufficiently clear and emphatic to deter a person of 'ordinary firmness' from submitting such petitions in the future.").

On August 2, 2022, Plaintiff filed grievance 22-3320, claiming that for more than a month a nurse would not renew his waist chain permit. (Griev., Doc. 63-4 at 7.) That day, Plaintiff explained that because of a lockdown at WICC, he was forced to suffer walking to the healthcare unit without a waist chain or opt not to receive medication. When Plaintiff attempted to discuss his concerns with his escort officer, Defendant Wessel[1] denied Plaintiff a waist chain. Wessel testified that because Plaintiff did not present a valid waist chain permit and he was not informed of any injuries that would make front cuffing impossible, Wessel opted to restrain Plaintiff by cuffing his hands in front of his body so that Plaintiff could use his cane while walking. (Wessel Disc. Res., Doc. 71 at 27.)

In his amended pleading, Plaintiff asserted that, even before the August 2022 incident, he was in litigation and writing grievances about the lack of medical services at WICC and was constantly retaliated against. (Doc. 12 at 10:9.) Plaintiff then described the cuffing incident alleged against Defendant Wessel as an example of that retaliation. (*Id*. at 10:10.) When asked what specific grievance or incident prompted Wessel's alleged retaliatory conduct, Plaintiff explained that the sheer "quantity" of grievances he had written "made him stand out." (Pl. Dep., Doc. 63-2 at 85:3-10, 20-21.) In this regard, Plaintiff stated that Defendant Wessel had "probably been over … in the Healthcare Unit for some time." (*Id*. at 85:10-12.) Plaintiff characterized the employees at WICC as family, claiming many were related and thus communicated with one another, which allowed other staff members to learn about submitted grievances. (*Id*. at 85:13-19.)

However, aside from Plaintiff's speculation and conclusory assertions, he fails to produce a single grievance or any other evidence showing that his First Amendment activity motivated Wessel's decision to take the alleged retaliatory

[1] Plaintiff asserts that although he refers to Sesson in grievance 22-3320, he intended to name Defendant Wessel. WICC confirmed that it did not have a corrections officer names Sesson.

action. *See Daugherty v. Harrington*, 906 F.3d 606, 610 (7th Cir. 2018) (holding that plaintiff failed to present sufficient evidence that defendant's conduct was motivated by the plaintiff's grievance, in part, because there was "no evidence about what the grievance said or whether [the defendant] even saw or knew about it"); *see also McGreal v. Village of Orland Park*, 850 F.3d 308, 313 (7th Cir. 2017) (noting that to survive summary judgment, a plaintiff must provide admissible evidence that the defendants were aware of the plaintiff's first amendment activity before they initiated the alleged retaliatory conduct).

The record also shows that on January 31, 2024, Defendant Spears wrote Offender Disciplinary Report ("ODR") 202400238/1, accusing Plaintiff of the following rule violations: 303-giving false information to an employee, 307-unauthorized movement, 308-contraband/unauthorized property, 313-disobeying a direct order, and 406-trading or trafficking. (Amend. Compl., Doc. 12-1 at 21; Pl. Griev., Doc. 63-4 at 1.) Spears based his ODR on observing an inmate drop off a concealed bag into Plaintiff's cell. Plaintiff told Spears he did not know about the bag or its contents. (Griev., Doc. 63-4 at 1.) After an Adjustment Committee hearing determined Plaintiff committed the rule violations, he was disciplined with one month of C grade status. (*Id*. at 2.)

Plaintiff filed a grievance K25-24-02-583, noting that ODR 202400238/1 neither mentioned him contacting the bag nor was Plaintiff's cellmate questioned. (*Id*. at 1.) A grievance officer recommended expunging ODR 202400238/1 because the bag was dropped in the cell's common area and thus, both Plaintiff and his cellmate should have been issued an ODR. (*Id*. at 2.) The Chief Administrative Officer concurred with the grievance officer's recommendation. (*Id*.) Plaintiff confirmed that ODR 202400238/1 was expunged. (Pl. Dep., Doc. 63-3 at 90:24-91:6.)

Thus, even if Defendant Spears had a retaliatory animus when he issued ODR 202400238/1, which the facts presented do not support, "[a] single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." *Bridges*, 557 F.3d at 555; *see also Hartman v. Moore*, 547 U.S. 250, 260 (2006) ("It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway.").

**3**

The Court determined that Plaintiff stated a claim under the Rehabilitation Act of 1973 ("Act") against Defendant IDOC for denying library services and failing to accommodate Plaintiff's disability when dining. (Doc. 17 at 7.) The Court based its determination on Plaintiff's allegations that he was forced to wait in a line to receive food even though he could not carry a food tray given his use of a cane and that an alternative law library placed in a ground-floor hallway with no privacy, noise controls, books, desks, or legal research access was not a reasonable accommodation. (*Id*. at 3-4.)

Defendant first contends that Plaintiff abandoned his dietary claim because during his deposition, he confined his answers to his library claims only. The Court disagrees, as defense counsel never asked Plaintiff specifically about his dietary claims during his deposition, and Plaintiff never affirmatively stated he was abandoning that claim, which he affirms in his response. (Doc. 71 at 4.) Thus, the Court concludes that Defendant IDOC has failed to satisfy its threshold burden of showing the absence of a genuine issue of material fact on Plaintiff's dietary claim under the Rehabilitation Act.

Additionally, Defendant claims an entitlement to summary judgment on Plaintiff's library claims, asserting that Plaintiff requested unreasonable

accommodations such as structural facility changes or a transfer to a facility with a first-floor law library. While that may be true, Plaintiff also testified, consistent with the facts alleged in his amended pleading, that the law library accommodation provided was a six-inch-wide bench located in a noisy hallway also occupied by inmates awaiting disciplinary proceedings, with no books, desks, or kiosk access. (Doc. 63-3 at 79:15-80:12.) Plaintiff explained that he had to get on his knees and use the bench to write. (*Id*. at 78:23-79:4.) Although Plaintiff acknowledged receipt of requested law library books, he stated the elapsed time it took to receive the requested materials would sometimes take half of the allotted ninety-minute library time. (*Id*. at 79:13-80:10.)

Defendant IDOC asserts that the conditions Plaintiff complains about are minor inconveniences that do not rise to the level of a constitutional violation. However, Defendant's assertion would mandate considerations that are not appropriate at the summary judgment stage. *See Whitaker v. Dempsey*, 144 F.4th 908, 917 (7th Cir. 2025) ("It is axiomatic that district courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, "both of which are the province of the jury."). Given Plaintiff's testimony, which establishes a genuine dispute that is not addressed in the dispositive motion or reply, the Court denies Defendant IDOC's motion for summary judgment on Plaintiff's Rehabilitation Act claim.

**IV**

In light of the foregoing, the Court Orders as follows:

1) Defendants' Motion for Summary Judgment (Doc. 63) is granted in part and denied in part.

2) Summary judgment is granted to Defendant Ashcraft on Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim and Defendants Spears and Wessel on Plaintiff's First Amendment retaliation

claims, but denied as to the Rehabilitation Act claim against IDOC.

3) The Clerk of the Court is directed to terminate Kathy Ashcraft, Christian Spears, and Jon Wessel as parties.

4) The Court will consider Defendant Shana Clarkson's Motion for Summary Judgment (Doc. 78) in a separate Order.

*It is so ordered.*

Entered: September 16, 2026

s/Jonathan E. Hawley
U.S. District Judge